UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY CLAY, EARNESTINE RUSSELL, MARIAN HOOVER, NONA SMITH, and NANCE L. DULAJ, on behalf of themselves and all other similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 07 C 4211 |
| vs. | ) ) | |
| CITY OF CHICAGO, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on cross motions for summary judgment. Plaintiffs Mary Clay, Earnestine Russell, Marian Hoover, Nona Smith, and Nance L. Dulaj ("Plaintiffs") move on behalf of themselves and a previously certified class for summary judgment of liability against Defendant City of Chicago ("the City") on the five counts of their complaint. The City moves for summary judgment of nonliability on all five counts. For the reasons set forth below, each motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs are former employees of the City. Each was a member of the American Federation of State, County, and Municipal Employees Council 31 ("the Union"). Their

terms of employment were set forth in a collective bargaining agreement ("CBA") between the City and the Union. The CBA was in effect from July 1999 until June 2003 and ultimately expired on June 30, 2003, when the City and the Union were unable to craft a replacement agreement. On the expiration date, attorneys for the City and for the Union agreed to extend the terms of the 1999-2003 agreements through midnight, July 30. The arrangement was memorialized in a letter dated June 30, 2003 ("the June letter"). It specified that, after July 30, the agreements would continue day to day, with no change in their terms, unless one of the parties terminated in writing. The June letter further stated that "the City agrees that wage increases, if any, agreed to by the parties shall be retroactive to July 1, 2003, unless the parties mutually agree to another date."

In late 2003 or early 2004, the City offered an early retirement incentive program ("ERIP") to eligible employees. Each named Plaintiff retired under this program in 2004. Meanwhile, the City and the Union continued their negotiations.

On June 7, 2005, the City and the Union reached a tentative agreement. In part, it provided for retroactive wage increases for work performed between July 1, 2003, and July 18, 2005, for employees who were on the City payroll as of July 18, 2005, which included employees who had been laid off with recall rights. In addition, the parties agreed that employees who retired between June 1, 2005, and July 18, 2005, would be

eligible for retroactive wage payments. In late July 2005, the City Council ratified the new CBA and it took effect.

Because Plaintiffs were not in any of the specified categories of employees, they did not receive retroactive wage increases. In July 2007, they filed a five-count complaint against the City. Counts I and V claim violations of procedural due process: Count I is premised on the denial of the retroactive increases; Count V, on the City's alleged failure to provide full information about the ERIP to prospective participants. Count II is an equal protection claim. Counts III and IV are state-law causes of action, for breach of contract and quasi-contract actions, respectively.

On September 24, 2008, this court certified a class consisting of all City employees who 1) left their job with the City 2) in either 2003 or 2004 3) via the ERIP who 4) belonged to the bargaining unit represented by the Union when they left their City job but 5) did not designate the Union as their representative subsequent to their retirement. Each side now moves for summary judgment on all counts of the class complaint.

**LEGAL STANDARD**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. Proc. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

When parties file cross motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other. *M. Snower & Co. v. United States*, 140 F.2d 367, 369 (7th Cir. 1944). Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment. *Miller v. LeSea Broadcasting, Inc.*, 87 F.3d 224, 230 (7th Cir. 1996).

With these principles in mind, we turn to the parties' motions.

**DISCUSSION**

The majority of the arguments developed by the parties in the motions under consideration mirror those decided in our March 31, 2008, ruling in *Marcatante v. City of Chicago*, Case Number 06 C 328. For the reasons set forth in that opinion, we again agree with the City that it is entitled to judgment as a matter of law on Counts I, II, III, and V of the Plaintiffs' complaint.

Count IV claims a breach of an implied contract based on Plaintiffs' provision of services to the City between July 1, 2003, and their retirement in 2004. We agree with Plaintiffs, as we did in the analogous situation in *Marcatante*, that the circumstances of this case gave rise to an implied contract between the City and the Plaintiff class. In the context of provision of services, an implied contract is formed if the party who provided the services can show that they were performed under circumstances where the recipient would be expected to pay for the services. *Ekl v. Knecht*, 585 N.E.2d 156, 161 (Ill. App. Ct. 1991). The amount due under such a contract is a reasonable price for the services rendered. *Id.* at 162. Here, Plaintiffs provided services to the City that the City would be expected to pay for during the time between the expiration of the previous CBA and their departure from the City's employ. The City's acceptance of those services formed an implied contract to pay a reasonable price for Plaintiffs' work. In counter to this proposition, the City makes two arguments

that were not made during the consideration of the summary judgment motions in *Marcatante*.

First, the City claims that any implied contract would be void for lack of a prior appropriation by the City Council. According to the Illinois Municipal Code, "no contract shall be made...and no expense shall be incurred by any of the officers or departments of any municipality...unless an appropriation has been previously made concerning that contract or expense." 65 ILCS 5/8-1-7(a). The employer/employee case upon which the City principally relies is *Chicago Patrolmen's Ass'n v. City of Chicago*, 309 N.E.2d 3 (Ill. 1974). In *Chicago Patrolmen's*, municipal employees argued that since they had received certain increases to their salaries in 1971, the City was equitably estopped from not providing the same increases in 1972 despite the absence of funds appropriated for that purpose. The Illinois Supreme Court disagreed and held that § 5/8-1-7(a) barred the employees' claim. The two other cases cited by the City involving employees struck down claims for overtime pay in a position that did not allow for that type of compensation or backpay for work outside of the employee's job classification. *May v. City of Chicago*, 222 Ill. 595 (1906); *Metro. Water Reclamation Bd. v. Civil Servs. Bd.*, 684 N.E.2d 786, 789-90 (Ill. App. Ct. 1997). In such a setting, Illinois courts have upheld the principle that if a municipality is without

that were not made during the consideration of the summary judgment motions in *Marcatante*.

First, the City claims that any implied contract would be void for lack of a prior appropriation by the City Council. According to the Illinois Municipal Code, "no contract shall be made...and no expense shall be incurred by any of the officers or departments of any municipality...unless an appropriation has been previously made concerning that contract or expense." 65 ILCS 5/8-1-7(a). The employer/employee case upon which the City principally relies is *Chicago Patrolmen's Ass'n v. City of Chicago*, 309 N.E.2d 3 (Ill. 1974). In *Chicago Patrolmen's*, municipal employees argued that since they had received certain increases to their salaries in 1971, the City was equitably estopped from not providing the same increases in 1972 despite the absence of funds appropriated for that purpose. The Illinois Supreme Court disagreed and held that § 5/8-1-7(a) barred the employees' claim. The two other cases cited by the City involving employees struck down claims for overtime pay in a position that did not allow for that type of compensation or backpay for work outside of the employee's job classification. *May v. City of Chicago*, 222 Ill. 595 (1906); *Metro. Water Reclamation Bd. v. Civil Servs. Bd.*, 684 N.E.2d 786, 789-90 (Ill. App. Ct. 1997). In such a setting, Illinois courts have upheld the principle that if a municipality is without

power to enter into the agreement upon which the plaintiff later sought to recover, the agreement is rendered void and unenforceable.

This case, however, is of a different sort than was discussed in the cases cited by the City. Here, the City formed agreements governing employment arrangements that were well within its power to form. In so doing, however, the City exercised that power in an irregular manner by setting up an agreement that purported to pay the Plaintiff class a rate for their completed work that was less than others ultimately received for providing identical services. When properly granted authority to form agreements is exercised in irregular ways, Illinois law provides that the lack of prior appropriation does not bar recovery for services already performed. *See Dell v. City of Streator*, 550 N.E.2d 252, 254 (Ill. App. Ct. 1990); *see also D.C. Consulting Engineers, Inc. v. Batavia Park Dist.*, 492 N.E.2d 1000, 1003 (Ill. App. Ct. 1986). This case presents circumstances where application of this rule is warranted, so the Plaintiffs' requested relief is not precluded by § 5/8-1-7(a).

Second, the City contends that the rate that the Plaintiffs received was reasonable because it complied with the salary schedules that were in effect under the 1999-2003 CBA. These schedules determine pay rate based on the job title and seniority of each employee, and according to the City, the salary rate prescribed by those schedules was the only reasonable rate for the services Plaintiffs rendered. This argument is

unconvincing, as the employees who did not retire would have also been paid pursuant to the salary schedules until the new agreement went into effect. Despite that, the City paid them a higher rate on a retroactive basis for the work that they performed in 2003 and 2004. Thus, the Plaintiffs' position that the rate paid to their colleagues who did not retire prevails in this case as it did in *Marcatante*.

Accordingly, Plaintiffs are entitled to summary judgment of liability on Count IV.

## CONCLUSION

Based on the foregoing analysis, the City's cross motion [80] for summary judgment is granted with respect to Counts I, II, III, and V and denied with respect to Count IV. Plaintiffs' cross motion [74] for summary judgment of liability is denied with respect to Counts I, II, III, and V and granted with respect to Count IV.

*Charles P. Kocoras*

Charles P. Kocoras
United States District Judge

Dated:    June 30, 2010